## QUARLES v. GLOVER.

1. The discharge of the maker of a promissory note, when arrested on a *ca. sa.* by his creditor, is not such a satisfaction of the debt as to relieve the indorser from his liability to the creditor upon the indorsement.

WRIT of Error to the Circuit Court of Perry.

Assumpsit by Quarles against Glover as administrator *de bonis non* of the estate of Grigsby, on his intestate's indorsement of a promissory note.

At the trial the defendant gave evidence that the plaintiff had sued out a *ca. sa.* on his judgment, against the maker, and after arrest had directed him to be discharged. There was also evidence tending to show that if he had not been thus released, the money would probably have been made. The Court charged the jury, if they should believe the money might have been made by said arrest, except for the discharge from custody, that it was a defence to the action, and the plaintiff ought not to recover.

The plaintiff excepted, and now seeks to reverse the judgment against him, on the ground that this charge is erroneous.

BECK, for the plaintiff in error, cited McDonald v. Bovington, 4 Term, 825; Lenox v. Prout, 3 Wheat. 520; Digest, 226, §2.

J. ERWIN, for defendant.

GOLDTHWAITE, J.—It must be conceded that there are many cases found in the books which seem to warrant the charge of the Court, but none of them, when examined, go so far as this.   Thus it has been held that if the plaintiff discharge one of several defendants on a *ca. sa.* he cannot retake him or any of the others.   [Clark v. Clement, 6 Term, 525.]   And if a bond given to the plaintiff with a condition to render in execution, one who was thereupon discharged, the condition is void.   [Da Costa v. Davis, 1 B. & P. 242.]   If a prisoner is permitted to go out of prison with the consent of the plaintiff, neither the sheriff nor the plaintiff can afterwards retake him, by virtue of the same or any other execution, for he is thereby said to be discharged from the judgment.   Therefore, if debt or *sci. fa.* be afterwards brought on the judgment, the defendant may plead the discharge ; or, if he be afterwards taken in execution, the Court, on motion will set aside the execution and discharge him out of custody.   [1 Sand. 35, a., note 1 ; Vigers v. Aldrich, 4 Burr. 2482; Jaques v. Withey, 1 Term. 557.]

We have said none of the decided cases go so far as this ; but a *dictum* of Lord Eldon asserts the precise principle ruled by the Circuit Court.   [English v. Darley, 3 B. & P. 61.]

The circumstance that it is usual in the English courts to enter satisfaction of the judgment when the defendant has been permitted to go at large from custody upon a *ca. sa.* connected with the dictum of Lord Eldon in the case of English v. Darley, render it necessary to trace this matter to its source, to see if his expression rests on a solid foundation.

Amongst the earliest decisions upon the nature and effect of a *ca. sa.* is the opinion of Lord Hobart, in Foster v. Jackson, [Hobart, 52, a.]   There the question, upon a special verdict was, whether a defendant dying in custody was a discharge of the debt, so far as the administrator was connected with it. The whole law in connection with this execution is examined at great length, and it was then held the execution was a satisfaction *in law*, notwithstanding the death of the debtor, and even the same when he should escape.   In both particulars

the law was afterwards changed, by act of Parliament. [21 Jas. 1 c. 24; 8 and 9 Will. III. c. 26.]

In the consideration of that case, after ascertaining the effect of a *fieri facias*, and *elegit*, which could be renewed until the whole debt was made, the learned Judge adds, "But if a *capias* be executed, that is in law sufficient for the whole debt; for *corpus humanum non recipit estimationem*, so as if you take it all, you must take it for the whole debt." Again, "it is agreed on all sides, that whereas the *elegit* or *fi. fa.* are both executions and satisfactions to all purposes and against all persons, the *capias* is a full execution, but is not a perfect satisfaction in value to all purposes and against all persons. I agree clearly that it is not an actual satisfaction, no, not between the parties; for when one was bound to satisfy for goods that he had embezzled, and in debt upon an obligation, he pleaded that upon a suit for those goods he was taken in execution for the damage, this was adjudged no plea. But this is nothing to the case in question; for without doubt it is no satisfaction to common speech, nor to a foreign plea. The question is, whether it be not *quasi* satisfaction, or satisfaction in law, to that very suit; for if an executor releases a debt, or discharge one in execution.it shall be accounted in law assets as received. Again, it is no satisfaction clearly, as to bar one to seek satisfaction against another liable to the same debt or damages."

It will be seen that it is the *taking* of the body upon the *ca. sa.* which is considered as the satisfaction in law, and that the *keeping* it is entirely immaterial; for if the prisoner escapes or dies, the result is precisely the same.

In several of the cases cited, but particularly those of Vigers v. Aldrich and Jacques v. Withy, the defendants were discharged upon conditions which they afterwards did not comply with, and, therefore, without a knowledge of the true rule, the discharge would seem to have been accorded to them for a violation of their engagements; but the reason for these, and indeed for all the decisions, is that the *taking* of the body was in itself a perfect satisfaction in law, and the discharge was entirely immaterial. So far as the person of the debtor, or his administrator after his death, the plaintiff has no remedy; but according to the opinion quoted, this legal satisfaction was never

held to bar the plaintiff from pursuing any other person liable for the same debt or damages.

If, as we have endeavored to show, it is the taking of the body which causes the satisfaction in law, and this is only personal between the defendant and the plaintiff, then the discharge by the act of the party has no other or greater effect than the discharge by death or by an escape. · In the two last cases, the plaintiff's remedy is gone forever, and yet the right to pursue any other person remains in full force; no greater effect can be given to the parties own act, inasmuch as it only produces the same results.

The case of McDonald v. Bovington, [4 Term, 825,] is somewhat similar to this. There a bill drawn by McDonald on Bovington, was indorsed to Thompson, who charged Bovington in execution, but he was discharged as an insolvent. Then Thompson sued McDonald and recovered. McDonald paid the bill, sued Bovington and charged him in execution. On a rule to discharge him, it was urged that Bovington had satisfied the debt by being formerly charged in execution by Thompson for the same debt. But Lord Kenyon said, that nothing could be clearer than that he had not, for it was a *mere formal satisfaction, not like actual payment,* and when McDonald paid the debt, a new cause of action arose against the defendant for the payment, without regard to what passed in the former action.

This is, indeed, a stronger case than the one before us, for it shows that even when legally discharged under an insolvent act, it was no discharge as to any other party; but it is indeed nothing more than the iteration of the opinion of Lord Hobart.

When such a question as this, is considered with reference to the kinder feelings of our nature, it is very difficult to conceive how one member of society can be, even to the slightest extent, compelled to hold another in confinement for the mere purpose of forcing money from his distress, and such would be the effect if all collateral engagements were released by the discharge of the principal debtor. Our ancestors, it seems, took a more humane, as well as a more liberal view, and though they gave the process to the creditor, as the means of coercing an unwilling debtor, they did not consider his abandonment of

it, any more than its exercise, as having the effect to discharge any other than the debtor himself. The only doubt we have entertained about this matter, was with respect to the indorser's right to a subrogation of the creditor's claim, unimpaired by any release or discharge; but as we have been able to find no case going to such an extent, we conclude that he is only entitled to such remedies as the creditor has retained against his debtor; the more especially as even the right to imprison may be revived by a suit in his own name, as was done in McDonald v. Bovington.

Independent of these views and reasons, which are sufficient to show that without any enactments by statutes, the creditor is permitted to release his debtor without forfeiting any rights against other parties liable to him, we cannot shut our eyes to the circumstance, that our whole course of legislation on the subject of this execution, has been in favor of the liberty of the citizen.

The plaintiff is not now entitled to the *ca. sa.* as a matter of course, but in order to obtain it, is required to make oath, that his debtor either has or is about to convey his effects fraudulently, or fraudulently conceals the same, or that he is about to abscond; and even then the debtor is entitled to his discharge if he will take a prescribed oath. [Meeks' Sup. 104.] Whatever may be the effect of a voluntary discharge by the creditor of his debtor, so far as the latter is personally answerable to the *ca. sa.* or other process of execution, we consider that it has not the effect to discharge any other party liable for the same debt.

This conclusion shows that the charge cannot be sustained, and the judgment of the Circuit Court is therefore reversed and remanded.